# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 12-CR-236 - IEG |
| v. | **ORDER:** |
| | **(1) DENYING RUDY ESPUDO'S MOTION TO SUPPRESS ALL WIRE AND ORAL COMMUNICATION INTERCEPTIONS ON MINIMIZATION GROUNDS [Doc. No. 983]; and** |
| RUDY ESPUDO (1); FRANCISCO GUTIERREZ (6), | **(2) DENYING FRANCISCO GUTIERREZ'S MOTION TO SUPPRESS WIRETAP EVIDENCE AND DERIVATIVE EVIDENCE FOR FAILURE TO MINIMIZE THE INTERCEPTED COMMUNICATIONS [Doc. No. 975]** |
| Defendants. | |

Presently before the Court is Defendant Rudy Espudo's ("Espudo") motion to suppress all wire and oral communication interceptions on minimization grounds. [Doc. No. 983, Espudo's Mot.] Also before the Court is Defendant Francisco Gutierrez's ("Gutierrez") motion to suppress wiretap evidence and derivative evidence for failure to minimize the intercepted communications. [Doc. No. 975, Gutierrez's Mot.] For the following reasons, the Court **DENIES** both motions.

## BACKGROUND

This case involves charges of conspiracy, racketeering, illegal drug distribution, extortion, and money laundering in connection with the Mexican Mafia

prison gang and several affiliated Sureno street gangs operating in northern San Diego county. Defendant Gutierrez filed a motion to suppress on April 1, 2013. [Id.] Defendant Espudo filed a subsequent motion to suppress on April 2, 2013. [Doc. No. 983, Espudo's Mot.] The Government filed a consolidated response in opposition to the motions on April 8, 2013. [Doc. No. 1004, Govt.'s Opp.] On April 17, 2013, Defendant Espudo filed a reply to the Government's response. [Doc. No. 1014, Espudo's Reply.] The Court heard related oral argument from the parties on April 19, 2013 and May 16, 2013. The Court held an evidentiary hearing on May 16, 2013 where FBI Special Agent Mathew Zeman ("Agent Zeman") testified.

On May 23, 2013, Defendant Espudo had a change of plea hearing before this Court, where all pending motions were withdrawn. At oral argument on April 19, 2013 and May 16, 2013, the Court deemed all parties joined in both motions. [Doc. Nos. 1017, 1061.] Accordingly, Defendant Espudo's motion remains pending as to the remaining Defendants.[1]

**DISCUSSION**

**I.   Minimization**

The Fourth Amendment governs wiretap surveillance. United States v. Petti, 973 F.2d 1441, 1443 (9th Cir. 1992) (citing Berger v. New York, 388 U.S. 41, 50-53 (1967); Katz v. United States, 389 U.S. 347, 352-53 (1967)). "The [Supreme] Court made clear that if certain conditions were met, wiretapping authorized by warrant would pass constitutional muster." Petti, 973 F.2d at 1443 (citing Berger, 388 U.S. at 54-60; Katz, 389 U.S. at 354-56). "Congress codified the requirements of Berger and Katz in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ('Title III')." Petti, 973 F.2d at 1443.

---

[1] Notwithstanding Defendant Espudo's withdrawal, for clarity, the Court will refer herein to Doc. No. 983 as Espudo's motion.

"Wiretapping authorized under Title III has been found to comply with the Fourth Amendment." United States v. Silberman, 732 F.Supp. 1057, 1058 (S.D. Cal. 1990) (citing United States v. Turner, 528 F.2d 143, 158-59 (9th Cir. 1975)).

Title III provides that wiretapping or electronic surveillance "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . ." 18 U.S.C. § 2518(5); see also United States v. McGuire, 307 F.3d 1192, 1199 (9th Cir. 2002). "Minimization requires that the government adopt reasonable measures to reduce to a practical minimum the interception of conversations unrelated to the criminal activity under investigation while permitting the government to pursue legitimate investigation." Id. "The United States Supreme Court has stressed that, because of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law that will decide every case." Id. (citing Scott v. United States, 436 U.S. 128, 139 (1978)). "The minimization techniques used do not need to be optimal, only reasonable." United States v. Rivera, 527 F.3d 891, 904 (9th Cir. 2008).

"The government has the burden to show proper minimization." Id. at 904. Whether the government complied with the statutory requirement to minimize requires the court to examine the monitoring officers' conduct in light of the particular circumstances. Scott, 436 U.S. at 140. "Our cases *require* the district court to conduct an evidentiary hearing when the moving papers filed in connection with a pre-trial suppression motion show that there are contested issues of fact relating to the lawfulness of a search." United States v. Mejia, 69 F.3d 309, 318 (9th Cir. 1995).

Defendant Espudo brings the present motion to suppress on the ground that "the interception technology employed in the investigation of this case failed to comply with the minimization requirements of the wire orders, the Fourth Amendment, and Title III because "recording of telephone call interceptions did occur without monitoring." [Doc. No. 983-1, Espudo's Mot. at 1-2, 11.]

Additionally, both Espudo and Gutierrez bring their motions on the grounds that there was a failure to properly minimize monitored calls, and that communications unrelated to the offenses for which the wiretap was authorized were intercepted. [Id.; Doc. No. 975-1, Gutierrez's Mot. at 4.]

### A. Voicebox Interception Technology

Espudo alleges that the Government uses an interception technology called VB Unified Collection Management System, or Voicebox, which is owned and manufactured by a Canadian company, JSI Telecom ("JSI").[2] Espudo states that Voicebox "is a server-based data collection system designed to intercept electronic communications and distribute them across a network of workstations that are used to monitor and analyze intercepted information." [Doc. No. 983-1, Espudo's Mot. at 3.] Espudo, relying on the system configuration in the Canadian Ahmad case, believes that the system is problematic in terms of minimization because it "can be configured to record everything, record without monitoring when the monitors are too busy to monitor all target calls, and/or to record each call for a preset time." [Id. at 4.] Espudo notes that in the U.S. cases where Kane and Stewart testified, recording without monitoring was not the issue. [Id.]

The Government counters that the version of Voicebox used for the present wiretaps does not provide for the ability to record portions of a telephone conversation that was minimized. [Doc. No. 1004, Govt.'s Opp. at 11.] The Government provided the declaration of Barry Stewart, a JSI representative, to present the relevant facts. [Doc. No. 1004-1, Ex. F at 50-52.] Stewart states that the

---

[2] Espudo's facts relating to Voicebox are from the testimony of Bruce Kane, a software engineer at JSI who had worked on Voicebox, in United States v. Villasenor, U.S. District Court for the Eastern District of California, Case No. 07-CR-248; the testimony of Barry Stewart, an Electronic Engineering Technologist and regional sales manager for JSI, in United States v. West, U.S. District Court for the Eastern District of Michigan, Case No. 06-20185; the Canadian Court decision in R. v. Ahmad, [2010] O.J. No. 3342 (Justice Dawson); and a review of the interception discovery provided in this case. [Doc. No. 983-1, Espudo's Mot. at 2-3.]

San Diego FBI used Voicebox Version 3.8, "which only provides for live monitoring of intercepted conversations." [Id. at 51, ¶ 2.] Stewart explains that "[i]n order for live monitoring to occur with FBI San Diego's Voicebox Version 3.8, an individual must both be logged into the monitoring system and have actually selected a line to monitor." [Id. ¶ 3.]

Regarding recording, Stewart explains that "when a call is minimized, the conversation is not recorded in any location." [Id. ¶ 4.] When a call is being monitored by an individual and is not being minimized, it is recorded to a single file, which is stored on a server maintained by FBI San Diego. [Id.] When no individual is logged in to the system, the calls are not recorded. These calls can never be heard because there was no live monitor at the time they were made. [Id. ¶ 6.]

Finally, Stewart explains that the Voicebox software configuration used in Canada is different from the one used in the United States. [Id. ¶ 7.] In accordance with Canadian law, the Voicebox software used in Canada "may be configured to allow for all calls to be recorded for a given telephone line, regardless of whether a monitor is logged into the system and listening to the call." [Id.] Additionally, "the Canadian configuration . . . allows users to listen to a portion of a call while it is occurring and then 'put away' the entire call until it can be reselected at a later time." [Id.] Only the Canadian system allows entire calls to be recorded regardless of whether a monitor is listening live. [Id.] Stewart states that the system used by FBI San Diego does not have these capabilities. [Id.]

Agent Zeman testified on May 16, 2013 consistently with Stewart's declaration. Agent Zeman testified that if a call is not actively selected by an individual to be monitored, then it is not recorded. Agent Zeman explained that only calls that are listened to live are recorded. Agent Zeman also testified that calls were classified by individuals, and not the Voicebox system, as either pertinent, non-pertinent, no audio, not monitored, privileged, and malfunction. Agent Zeman

explained that where a call that contained audio was classified as "not monitored," the individual selecting the classification made a mistake.

Despite Agent Zeman stating that calls with audio that were classified as "not monitored" were erroneously labeled, Espudo at oral argument nevertheless contended that Agent Zeman's testimony did not address instances where calls with audio were labeled as "not monitored." In light of Agent Zeman's testimony that such instances were a mistake and Stewart's declaration stating that the version of Voicebox used in the United States does not allow calls that are not monitored live to be recorded, Espudo's arguments are merely unsupported assertions. Espudo also noted that on cross-examination, Agent Zeman stated that he did not recall checking whether calls classified as "not monitored" contained audio. However, this statement does not demonstrate that calls not monitored were recorded.

Accordingly, in light of Agent Zeman's testimony and Stewart's declaration that only calls monitored live may be recorded, and the lack of evidence to the contrary, the Court finds that the Government has met its burden to show proper minimization regarding the use of Voicebox. The Court therefore **DENIES** Espudo's motion to suppress as the Voicebox interception technology complies with minimization requirements.

### B. Improper Minimization of Calls

Espudo next cites some specific calls that he argues were not properly minimized, such as sessions that were labeled as non-pertinent but contained audio. [Doc. No. 983-1, Espudo's Mot. at 7-10.] Gutierrez raises a similar argument in his motion. Gutierrez argues that the minimization provisions in the wiretap orders were "manifestly violated by the [G]overnment during these interceptions, resulting in the interception of hundreds of communications unrelated to the offenses for which interception was authorized." [Doc. No. 975-1, Gutierrez's Mot. at 4.] Gutierrez presents statistics regarding the number of calls intercepted and the number of calls minimized: more than 7,000 calls were intercepted over target

telephone 7; the Government's line sheets indicated that 99 calls were minimized; and 174 of the captured calls were listed as pertinent. [Id. at 5.] Gutierrez uses these statistics to argue that "the overwhelming number of calls and electronic responses [text messages] received over [target telephone 7] were not pertinent and apparently not minimized." [Id.] Gutierrez concludes that there was a "wholesale failure to minimize conversations unrelated to the offenses for which interception authorization had been granted . . . ." [Id.] The Court will consider both motions together.

The Government argues that it made "substantial, reasonable efforts to minimize communications not otherwise subject to interception." [Doc. No. 1004, Govt.'s Opp. at 4.] In support, the Government details several procedures, which it argues complies with the minimization requirement. [Doc. No. 1004, Govt.'s Opp. at 3-4; Doc. No. 1004-1, Ex. A, Zeman Decl. at 2-4.] Additionally, the Government contends that Gutierrez's motion is "misleading." [Doc. No. 1004, Govt.'s Opp. at 4.] The Government clarifies that although more than 7,000 interceptions occurred over target telephone 7, approximately 1,351 were completed and only 326 exceeded two minutes in length. [Id. at 5.] Of the 326 calls that exceed two minutes, 80 were classified as pertinent. [Id.] Therefore, 246 were deemed non-pertinent. [Id.] Of these 246 calls, approximately 126, or 51%, were minimized. [Id.]

In a case where the defendants did not challenge the introduction of specific conversations into evidence on the ground that monitoring agents should have minimized those particular conversations, the Ninth Circuit only examined whether the government had made a prima facie showing of compliance with the minimization requirement. United States v. Torres, 908 F.2d 1417, 1423 (9th Cir. 1990). "Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue

legitimate investigation. . . . The standard for minimization is reasonableness." Id. (internal citation omitted); see also United States v. Rivera, 527 F.3d 891, 904 (9th Cir. 2008) ("The minimization techniques used do not need to be optimal, only reasonable."). "The United States Supreme Court has stressed that, because of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law that will decide every case." McGuire, 307 F.3d at 1199 (citing Scott v. United States, 436 U.S. 128, 139 (1978)).

In Torres, the Ninth Circuit found the following procedures in combination to be reasonable and to not run afoul of the minimization requirement: (1) monitoring agents were instructed on the requirements and the need for minimization, and were required to read the minimization guidelines; (2) supervising agents were present in the wire room during the interceptions; and (3) an Assistant U.S. Attorney ("AUSA") was on call to answer questions regarding minimization. Torres, 908 F.2d at 1423.

Further, "[t]he statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." Scott, 436 U.S. at 140. "In determining whether the agents properly minimized, it is . . . important to consider the circumstances of the wiretap. For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." Scott, 436 U.S. at 140. "[I]t may [also] be important to determine at exactly what point during the authorized period the interception was made. During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter." Id. at 141.

"Because many telephone calls are brief in duration, a listener frequently cannot determine a particular call's relevance to the investigation before the call has

been completed." United States v. Homick, 964 F.2d 899, 903 (9th Cir. 1992). In Homick, the Ninth Circuit held that the Government's instruction to agents to listen to all conversations for two minutes and to then terminate non-pertinent calls after that time did not violate the statute. Id. The Ninth Circuit has also held that a minimization provision that allowed a call to be intercepted for a "reasonable time, usually not more than two minutes to determine whether the conversation concerns criminal activities" was adequate. See Rivera, 527 F.3d at 905.

Finally, the Supreme Court has cautioned that "blind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer. Such percentages may provide assistance, but there are surely cases . . . where the percentage of nonpertinent calls is relatively high and yet their interception was still reasonable." Scott, 436 U.S. at 140.

Here, although Espudo cites specific examples where he believes the agents did not properly minimize, Defendants do not challenge the introduction of specific conversations into evidence. Therefore, the Court need only examine whether the Government has made a prima facie case of compliance with the minimization requirement. Torres, 908 F.2d at 1423.

Agent Zeman testified at oral argument that all agents were obligated to read the minimization instructions before conducting any live monitoring. He said that each monitor signed the minimization instructions. He also stated that the names of individuals to call in case the monitors had any questions were both posted on the wall of the wire room and given to the monitors. Agent Zeman testified that each shift in the wire room had a designated supervisor. He also stated that questions to him from the monitors were common. Regarding the nature of the investigation, Agent Zeman testified that the individuals being monitored often used code words, which differed among the gangs and even individuals, during their communications.

Corroborating Agent Zeman's testimony regarding the minimization procedures are Government Exhibits 1 through 8, which are the minimization

instructions given to the supervising and monitoring agents. [Govt. Ex. 1-8.] The instructions stated, *inter alia*, that agents "may monitor calls for a period of time--generally up to two minutes--to determine if a conversation is pertinent" and must minimize calls they determine are not pertinent. [See, e.g., Govt. Ex. 1 at 12CR0236-MINIMIZATION-2; Govt. Ex. 2 at 12CR0236-MINIMIZATION-20.] The instructions also included the phone numbers of AUSA Fred Sheppard ("AUSA Sheppard"), Agent Zeman, and others, with the instructions that "the supervising agents and attorneys are available 24 hours a day and may be contacted at any time with questions." [See, e.g., id. at 12CR0236-MINIMIZATION-22-23; Govt. Ex. 1 at 12CR0236-MINIMIZATION-4-5.] The instructions were also signed by the supervising and monitoring agents. [See, e.g., id. at 12CR0236-MINIMIZATION-5-7; Govt. Ex. 2 at 12CR0236-MINIMIZATION-23-25.] The Government also provided Government Exhibit 9, which includes video and audio recordings given to the monitors of AUSA Sheppard providing minimization instructions. [Govt. Ex. 9.]

In light of the Supreme Court's caution against blind reliance on percentages, the Court finds that Gutierrez's arguments regarding statistics do not on their own show a failure to minimize. See Scott, 436 U.S. at 140. Furthermore, the Court is not persuaded by Espudo's identification of a few calls that were deemed non-pertinent but were not minimized. As one district court explained, "[t]he statute does not refer to 'pertinent' or nonpertinent' calls. To the extent that Defendant is attempting to expand the requirement of minimization to calls that were not minimized but were later determined to be nonpertinent, the Court must reject the argument." United States v. Borrayo-Gutierrez, 119 F.Supp.2d 1168, 1184 (D. Colo. 2000). Rather, what is relevant to the inquiry is whether the minimization procedures were reasonable.

The Government has made a prima facie showing of compliance with the minimization requirement. Various factors identified by the Ninth Circuit and the

Supreme Court are present in the instant case which support a finding that the minimization procedures were reasonable: monitoring agents were instructed on the minimization requirements; the presence of supervising agents in the wire room when interceptions were occurring; and an AUSA was on call. See Torres 908 F.2d at 1423. Finally, this case involves a widespread conspiracy involving complex coded language, which justifies more extensive surveillance. See Scott, 436 U.S. at 140.

Accordingly, the Government has met its burden to show proper minimization. Therefore, the Court **DENIES** Gutierrez's and Espudo's motions seeking suppression on the grounds of improper minimization of calls.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Espudo's motion to suppress all wire and oral communication interceptions on minimization grounds, and **DENIES** Gutierrez's motion to suppress wiretap evidence and derivative evidence for failure to minimize the intercepted communications.

**IT IS SO ORDERED.**

**DATED:** June 1, 2013

**IRMA E. GONZALEZ**
**United States District Judge**